## Union Railway and Transit Co.
## v.
## Louisa J. Shacklett, Adm'x, etc. ,

1. Negligence of two companies.—In case of an accident caused by a collision of trains of two railway companies, the negligence of the passenger's carrier will not prevent his recovering from the other whose negligent act contributed to the injury. They may be sued as any other wrongdoer, jointly or severally.

2. Letters of administration—Error.—Where, under the issues, no proof of letters of administration was necessary, an error committed by the court in admitting such letters would be immaterial.

3. Negligence.—Where deceased was accompanying his stock to its destination and by the direction of the train employes rode on the tender of the engine, an exceedingly dangerous position, especially in the stockyards, where there were numerous tracks used by various roads without any rules or regulations governing the movement of trains, and by a collision of trains in the st ckyards was killed, held, that under the evidence the judgment in favor of deceased's administrator was proper.

Error to the City Court of East St. Louis; the Hon. Wm. P. Launtz, Judge, presiding. Opinion filed April 15, 1886.

Messrs. G. & G. A. Koerner, for plaintiff in error.

Mr. M. Millard, for defendant in error.

Wilkin, J. Elijah Shacklett, with his brother Absalom, in September, 1879. shipped four car loads of stock from Dresden, Mo., to the National stockyards over the Missouri Pacific R. R., the two brothers accompanying the train having stock passes. At the Union depot in St. Louis the defendant's engine took the stock cars for the purpose of transferring them across the river to the stockyards. While at St. Louis, they got on the top of the cars to ride but were ordered by the man who coupled the engine to their train to go to the engine, which they did and were there ordered by a man in the cab who, the brother says he supposed was the engineer, to ride on the tender. The top of the tender was flat, and

sloping or wedge shaped. After crossing the river, as the engine with its cars was passing through the stockyards, it met a train of the Wabash, St. Louis and Pacific backing out on the same track, and on a sharp curve the two collided, the rear car of the Wabash running upon the tender on which Elijah Shacklett was riding and killing him almost instantly. The deceased had never been across the river to the stockyards, and had no knowledge of the situation of the railroad tracks, or the manner of running trains on them there.

The defendant had been engaged in transferring stock in this manner since the building of the bridge in the fall of 1874, and its custom was to carry the persons accompanying stock, either in a caboose or on the engine tender, as deceased was riding when killed.

The engineer who had charge of the engine on this occasion, in his testimony, speaking of the place of the accident says, "It's a bad, very bad place, and we have always looked out." On cross-examination he says, " There was no rule as to using tracks—the tracks belonged to the stockyards company; they were used by all the companies who had business there." He also says the best p'ace to ride was on the engine.

Another witness testified, "The practice was, if the bridge company's caboose was not handy they packed the men on the tender and let them come over.

Defendant in error sued the Wabash, St. Louis & Pacific Railway Company for the same injury, and recovered judgment in the City Court of East St. Louis, and the case having been appealed, first to this and afterward to the Supreme Court, it was reversed and remanded. On a second trial she again recovered judgment. which remains in full force unsatisfied. That judgment was set up by the plaintiff in error in bar of this action. The court below sustained a general demurrer to the plea, and while that decision is assigned as one of the errors on the record it is not urged here, and may be disposed of by simply saying that the demurrer was properly sustained.

The objection made to the first instruction given on behalf of defendant in error is answered by the decision in the case of defendant in error against the W., St. L. & P. R. R.

Company, 105 Illinois Reports, 364, in which it is expressly held that the negligence of the passenger's carrier will not prevent his recovering from another whose negligent act contributed to the injury ; that they may be sued as any other wrong-doers, jointly or severally. "The degrees of negligence of the two railroads" has nothing whatever to do with the case. If, as a matter of fact, the negligence of the plaintiff in error was but slight, as compared with that of the Wabash, the right of defendant in error to recover would not be affected thereby, if it also appeared that her intestate was at the time exercising due care, and was injured by the negligence of plaintiff in error, and on this theory the jury was properly instructed at the instance of both parties. It is insisted that the court erred in admitting the copy of letters of administration for the reason that they were not properly certified under the act of Congress.

While this error was committed by the court below, it can avail nothing for the reason that under the issues no proof of letters of administration was necessary. Ballance v. Frisby et al., 2 Scam. 63 ; Collins v. Ayers, 13 Illinois R. 358 ; Chicago Legal News Co. v. Thomas R. Browne et al., 103 Illinois R. 317.

On the merits of this case we hold that the judgment of the court below was authorized by the evidence. The deceased clearly had the right to accompany his stock to its destination, whether it was absolutely necessary that he should do so or not. This right plaintiff in error recognized, not only in his case, but by their custom in transferring stock generally. He was upon the tender of the engine, not of his own choice or merely by permission, but by the directions of the employes of plaintiff in error who had charge of the train. He was therefore lawfully there, and entitled to the same protection, care and diligence from plaintiff in error as though he had been a passenger in the usual manner.

The peril of his position did not arise from his being on the tender alone. That position was not necessarily dangerous, but liable to become extremely so in passing over the track through the stockyards, where there were numerous tracks

used by various railroad companies, without any rules or regulations governing the movement of trains. These facts were all known to plaintiff in error but not to the deceased. It is said that the stockyards company and the Missouri Pacific were blamable for this accident, the one for laying its tracks as they were and the other for not providing a caboose in which to transport the deceased to his destination. Whether this is true or not, the plaintiff in error can not escape the liability of its negligent act, which caused or contributed to the killing.

This case is clearly distinguishable from all those in which a person wrongfully places himself upon a train or voluntarily puts himself in a place unusual for carrying passengers, or of his own choosing takes a place or position of known danger by permission of train men. He was acting in obedience to orders. Had he left the engine after passing through the tunnel and retaken his place on the cars, as counsel say he should have done, and there received an injury, plaintiff in error might well have said that he was there wrongfully and contrary to the orders of its employes in charge of the train, and that therefore it was not liable. As it was, he was ordered to take his place on the tender, and in that position carried to a place of extreme peril on a track which plaintiff in error knew was liable to be obstructed by other trains, resulting in his death; and we hold that it is liable, and that the allegations of the declaration are sufficient to support the judgment, and it is therefore affirmed.

Affirmed.